UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GABRIEL PEEPLES,

       Plaintiff,

v.

CLINICAL AND  SUPPORT
OPTIONS, INC.,

       Defendant.

Civil Action No.: 3:20-cv-30144-KAR

## MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

### I. Introduction

Gabriel Peeples ("Peeples" or "Plaintiff") is a 31-year-old, non-obese person in good overall health.  He wants to work from home because he has moderate asthma and is concerned that he may be exposed to COVID-19 at work.  To accommodate their health concern, his employer, CSO, has taken many reasonable precautions to ensure Peeples and their[1] co-workers are safe from exposure to COVID-19.  CSO has made Peeples' workplace safer than going to the grocery store.

Peeples has filed suit and the instant motion for temporary restraining order ("TRO") because they believe that CSO is legally obligated to grant his wish to work from home.  Peeples is wrong and so they cannot meet their burden of establishing a strong likelihood of success on the merits.  Peeples also has not made the requisite

---

[1] The undersigned will refer to Plaintiff by their preferred pronouns of they/them.  Any failure to do so herein is unintentional.

showing of irreparable harm if his wish to work from home is not granted.

Consequently, Plaintiff's TRO motion should be denied.

## II.  Statement of Facts

CSO provides essential behavioral health services throughout western and central Massachusetts through a variety of programs including its Center for Community Resilience after Trauma ("CCRT") in Greenfield, Massachusetts.  (Affidavit of Melody Arsenault at ¶ 3 (hereinafter "Arsenault Affdvt. ¶ _"))

CSO hired Peeples for a management position as Assistant Program Manager for CCRT although he had no prior management experience.  He started work on March 2, 2020, at CSO's offices located at One Arch Place in Greenfield where he was expected to report for work every work day.  (Arsenault Affdvt. ¶¶  4-5)

### COVID-19

CSO was not covered by the state's March 10, 2020 state of emergency declaration because it is an essential service provider, but it wanted to mitigate risk to its employees and the people it serves.  CSO directed all employees who could feasibly work from home ("telework") to do so.  Peeples began to work from home on March 18, 2020.  Unlike many employers, CSO did not furlough or layoff any employees as a result of the pandemic.  (Arsenault Affdvt. ¶¶  6-8)

### The May "Re-Opening"[2]

CSO has implemented the workplace safety rules on social distancing, hygiene protocols, staffing and operations, and cleaning and disinfecting that were contained in

---

[2] CSO never closed its offices or programs.

Governor Baker's May 18, 2020 order on the phased re-opening of workplaces which it communicated to Peeples and all of its other employees.  (Arsenault Affdvt. ¶¶ 9-10)

Safety Precautions Taken at Arch Place

CSO took a host of COVID-19 related safety measures at One Arch Place, a three-story office building it owns and manages, including, but not limited to:

a.      Implementing and enforcing a mask mandate;

b.      Directing its professional cleaning contractor to more deeply clean its offices at night;

c.      Directing its onsite management to clean and disinfect during the work day;

d.      Installing a "hospital-grade" air filtration system throughout the building;

e.      Making UV light sanitizing wands available to employees to disinfect surfaces as needed;

f.      Providing all staff, including Peeples, with access to KN95 masks, surgical masks, hand sanitizer, sanitizing wipes, gloves, etc.; and

g.      Directing all employees to follow government guidance to socially distance, avoid close contact with others, and practice vigilant sanitation.

(Arsenault Affdvt. ¶¶ 11-19)

CSO also made a series of accommodation for Peeples in particular.  It provided Peeples with a new, separate, private work space in the CCRT program area on the second floor, which they selected.  And, as recently as last week, offered a different work space on the first floor.  CSO gave him an air purifier for his office.  It has also

offered Peeples the use of accrued time or a personal leave of absence if they felt that they did not wish to return to the office.  (Arsenault Affdvt. ¶¶ 21-25)

CSO needs managers on-site to ensure that its programs can efficiently operate. Managers must be on-site to enforce agency rules, including COVID-19 safety rules. Due to the unpredictable nature and increase in acuity of the needs of the agency's clients during this time, the agency must have the ability for in-person response, which is a function currently being provided by managers.

CCRT, Peeples program, which serves victims of crime, has not been able to operate as designed due lack of in-person staff who can conduct groups, like Peeples, or can, more generally, work in-person with external community partners such as law enforcement, hospitals, and mental health providers.  (Arsenault Affdvt. ¶¶ 33-36) Other CSO Managers with serious health conditions are working onsite successfully with accommodations at Arch Place.  One of them also has asthma but is working COVID-19 free, to date, on site.  (Arsenault Affdvt. ¶¶ 27-31)

<u>Alleged Harm to Peeples</u>

CSO is following the applicable general and specific state guidance on how to reduce COVID-19 risk in the workplace.  If CSO wanted to get rid of Peeples it had a golden opportunity to do so when he tendered his resignation when he did not get his wish to work from home.  It didn't do so and it allowed Peeples to rescind his hasty resignation.  Clinicians, like Peeples, may be hard to recruit but that does not mean they get to dictate the terms and conditions of their employment, particularly where their demands are unreasonable.  (Arsenault Affdvt. ¶¶  38-42)

Greenfield and Franklin County are relatively safe places from a COVID-19 standpoint.  (Arsenault Affdvt. ¶ 45)  And Arch Place is likely even safer because of the safety precautions CSO has put in place there.  Fortunately, those efforts have resulted in no COVID-19 exposure or infection there.  (Arsenault Affdvt. ¶ 46)  With continued vigilance, CSO intends to keep it that way.

### III.  Legal Argument

This record does not support granting the instant motion because it is essential to CSO that its managers work in person in order to enforce its polices and provide in person services, where necessary.  CSO did grant Peeples their preferred accommodation of telework for more than three months but can no longer do so without significantly impairing its ability to fulfil its mission.  CSO knows better than Peeples what functions are essential to his position, after all, Peeples was only in the position for two weeks before they began their telework accommodation.

Our disability discrimination laws do not guarantee that disabled workers be granted the accommodation that they want if their employer provides the accommodation they need.  See Enica v. Principi, 544 F.3d 328, 342, 2008 BL 223307, 11 (1st Cir. 2008) (employer need not grant the accommodation of choice but is required to engage in good faith to find another reasonable accommodation).  Peeples' claims to need a workplace where the risk of COVID-19 transmission has been mitigated as much as reasonable possible.  CSO has done that.  "A reasonable accommodation" [is one that "'enable[s] a qualified individual with a disability to perform the essential functions of [his] position'"].  Bostick v. Smith & Wesson Corp., 2017 BL

165509, 10 (D. Mass. Apr. 25, 2017) (citations omitted).  CSO has satisfied its obligation under the ADA and Chapter 151B.

A.      Peeples Is Unlikely To Succeed On The Merits.

To state a *prima facie* case of disability discrimination based on a failure to accommodate, Peeples must establish that "(1) [they] suffers from a disability or handicap, as defined by the ADA and Chapter 151B, that (1) they are handicapped person within the meaning of the statute; (2) they are qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) CSO knew of his disability but did not reasonably accommodate it upon a request.  See Zemrock v. Yankee Candle Co., 2017 BL 37213, 5 (D. Mass. Feb. 07, 2017).  Peeples has failed to satisfy their burden.

CSO is not legally obligated to extend Peeples' temporary telework accommodation for a third time because continuing to excuse Peeples from essential job functions would significantly impair CSO's operations.  CSO approved Peeples first two requests to telework from mid-March to early July.  (See generally, Verified Complaint at ¶¶ 61-121).  CSO does not need to accommodate a disability by jettisoning essential job functions, like being on site to enforce policies and helping clients in person.  Laurin v. Providence Hosp., 150 F.3d 52 , 56 (1st Cir. 1998); see also Dziamba v. Warner & Stackpole LLP, 56 Mass. App. Ct. 397 , 778 N.E.2d 927, 933 (Mass. App. Ct. 2002) (employers need not make substantial changes in the standards of a job to fulfill their obligation to reasonably accommodate).  Peeples' request for indefinite telework would substantially change his job.

Peeples argues that his temporary telework accommodation should be resumed because, in part, it was previously afforded him and it worked well in his estimation. The EEOC addressed this issue in its pandemic-related guidance entitled *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*.[3]  In Section D relating to the duty to reasonably accommodate the following question and answer is found:

> **D.15.  Assume that an employer grants telework to employees for the purpose of slowing or stopping the spread of COVID-19. When an employer reopens the workplace and recalls employees to the worksite, does the employer automatically have to grant telework as a reasonable accommodation to every employee with a disability who requests to continue this arrangement as an ADA/Rehabilitation Act accommodation?** *(9/8/20; adapted from 3/27/20 Webinar Question 21)*
>
> No. Any time an employee requests a reasonable accommodation, the employer is entitled to understand the disability-related limitation that necessitates an accommodation. If there is no disability-related limitation that requires teleworking, then the employer does not have to provide telework as an accommodation. Or, if there is a disability-related limitation but the employer can effectively address the need with another form of reasonable accommodation at the workplace, then the employer can choose that alternative to telework.
>
> To the extent that an employer is permitting telework to employees because of COVID-19 and is choosing to excuse an employee from performing one or more essential functions, then a request—after the workplace reopens—to continue telework as a reasonable accommodation does not have to be granted if it requires continuing to excuse the employee from performing an essential function. The ADA never requires an employer to eliminate an essential function as an accommodation for an individual with a disability.
>
> The fact that an employer temporarily excused performance of one or more essential functions when it closed the workplace and enabled employees to telework for the purpose of protecting their safety from COVID-19, or otherwise chose to permit telework, does not mean that the employer permanently changed a job's essential functions, that telework is always a feasible accommodation, or that it does not pose an undue hardship. These are fact-specific determinations. The employer has no obligation under the

---

[3] https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws

ADA to refrain from restoring all of an employee's essential duties at such time as it chooses to restore the prior work arrangement, and then evaluating any requests for continued or new accommodations under the usual ADA rules.

This guidance[4], though not binding on this Court, reaffirms that the reasonable accommodation analysis still turns on an assessment of essential job functions and reaffirms that an employer need not forego essential job functions to accommodate.

Peeples has merely set out the possibility of success of the merits rather than the "strong likelihood" that our law requires.  See, Respect Maine PAC, 622 F.3d 13. 15 (1st Cir. 2010) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 21 (2008)). Peeples failure to show a strong likelihood of success on the merits – particularly where he has presented no current medical information supporting the request to work from home due to his asthma – spells doom for the instant motion because "[t]hough each factor is important, we keep in mind that "[t]he sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." Sindicato Puertorriqueño de Trabajadores Local 1996 v. Fortuño, 699 F.3d 1, 10, 2012 BL 275489, 7 (1st Cir. 2012), quoting New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002).

B.      Plaintiff Will Not Suffer Irreparable Harm If Not Allowed to Telework.

Because Peeples has not met their burden to demonstrate a strong likelihood of success on the merits, this Court need not need to reach the other factors in determining whether to issue a temporary restraining order.  See Lewis v.

---

[4] The MCAD does not appear to have issued any COVID-19 related guidance bearing on the duty to reasonable accommodation under M.G.L. ch. 151B.

Spaulding, 2018 BL 424794, 4 (D. Mass. Nov. 16, 2018).  CSO addresses the

irreparable harm factor in case the Court does not share this view.

Plaintiff is under no imminent threat of irreparable harm.  None of the "parade of

horribles" predicted by Plaintiff is likely to occur in the near future.  For instance, Plaintiff

predicted that he would "presumably" be fired if he did not report to his Arch Place office

on September 8.  He wasn't.  If fired, he contends that he would lose health care

coverage.  The Affordable Care Act ensures that he wouldn't.  He further warns that he

would join the long-term unemployed although he works in a high demand position and

has an impressive background.  Finally, Plaintiff warns that they could lose his housing

even though he would be eligible for unemployment assistance and there is a

foreclosure and eviction moratorium in effect in Massachusetts until October 18, 2020.[5]

(See generally, Plaintiff's Memo at pp. 14-15.)  Even if any of these speculative events

occurred, they would not be irreparable as each could be remedied by monetary

damages awarded at trial.  Plaintiff has an adequate remedy at law.  Injunctive relief is

both unnecessary and inappropriate here.

The First Circuit Court of Appeals has noted that employment disputes often do

not rise to the level of irreparable harm.  Ralph v. Lucent Techs., Inc., 135 F.3d 166,

157 LRRM 2466 (1st Cir. 1998).  In that case, the First Circuit agreed that that

employment dispute was the rare case in which injunctive relief ordering a four-week

return to work was warranted.  It agreed with this district court's finding:

> "I also find that Ralph has demonstrated irreparable harm. Though losses
> occasioned by employment disputes often do not rise to the level of irreparable

---

[5] (See, https://www.mass.gov/news/baker-polito-administration-extends-moratorium-on-evictions-and-foreclosures-to-october 17#:~:text=BOSTON%20%E2%80%94%20Today%2C%20Governor%20Charlie%20Baker,19%20Emergency%2C%20which%20was%20signed

harm, Ralph's case is different for two reasons. First, the harassment Ralph suffered at Lucent played a significant role in his breakdown. Medical evidence suggests that returning to work is essential to his recovery. Second, Ralph's disability will worsen the longer he is out of work. These circumstances distinguish Ralph's case from the standard discrimination lawsuit."

Id. at pp. 170-1. These facts presented a genuine issue of life and death.  Peeples hyperbolic claims do not.  For instance, since his return to work at Arch Place, Peeples alleges to have lost ten pounds because they feel they cannot take a sip of water or bite to eat inside Arch Place.  Even if Peeples is genuinely so concerned about COVID-19 that they cannot slip a straw or morsel of food into their mouth behind there mask at their desk, there is no reason that Peeples needs to go long periods without eating or drinking water as he claims.  He can simply go wherever he feels safe to do so whenever the need arises.  His assertion to the contrary is not credible.

## IV.  Conclusion

On the evidentiary record before this Court, it cannot reasonably be said that Plaintiff has demonstrated a strong likelihood of success on the merits.  Accordingly, the instant motion must be denied.

Alternatively, the Court should schedule an evidentiary hearing on a preliminary injunction in sixty days following limited and focused discovery by the parties.  The gravamen of Peeples' case is whether working at Arch Place is an essential function of his job.  CSO, which knows his job best, contends it is.  Peeples contends it is not.  This is a fact-intensive inquiry ill-suited to adjudication at hearing on a temporary restraining order.  "[C]ases involving reasonable accommodation turn heavily upon their facts and an appraisal of the reasonableness of the parties' behavior."  Rocafort v. IBM Corp., 334 F.3d 115, 120 (1st Cir. 2003), quoting Jacques v. Clean-Up Group, Inc., 96 F.3d 506,

-11-

515 (1st Cir. 1996).  Only through the development of further evidence beyond what is set forth in the Verified Complaint or Melody Arsenault's Affidavit, may the likelihood of success on the merits be more fully considered.

Respectfully Submitted,

 /s/ Timothy F. Murphy
Timothy F. Murphy, Esq.
BBO No.: 556429
Counsel for Defendant
Skoler, Abbott & Presser, P.C.
One Monarch Place, Suite 2000
Springfield, Massachusetts  01144
Tel.: (413) 737-4753/Fax: (413) 787-1941
Dated:  September 11, 2020          E-Mail:  tmurphy@skoler-abbott.com

CERTIFICATE OF SERVICE

        I hereby certify that a true and accurate copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on September 11, 2020.

 /s/ Timothy F. Murphy
Timothy F. Murphy, Esq.