UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GABRIEL PEEPLES, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 3:20-cv-30144-KAR |
| | ) |
| CLINICAL SUPPORT OPTIONS, INC., | ) |
| | ) |
|     Defendant. | ) |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S FIRST MOTION FOR A
TEMPORARY RESTRAINING ORDER
(Docket No. 2)

ROBERTSON, U.S.M.J.

I.     INTRODUCTION

This matter is before the court on plaintiff Gabriel Peeples' ("Plaintiff," "they," "them," "their") motion for a preliminary injunction under Fed. R. Civ. P. 65(a) and (b) to preclude the termination of their employment by defendant Clinical Support Options, Inc. ("Defendant" or "CSO") (Dkt. No. 2). Plaintiff, who suffers from moderate asthma, alleges that notwithstanding their increased vulnerability to the novel coronavirus, Defendant has refused to permit them to continue to telework in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, *et seq.* (Count I) and Mass. Gen. Laws ch. 151B, § 16(4) ("Chapter 151B") (Count II).[1] The parties have consented to this court's jurisdiction (Dkt. No. 12). *See* 28 U.S.C. §636(c); Fed. R. Civ. P. 73. After hearing from the parties via videoconference on September 11, 2020,

---

[1] Plaintiff moved for expedited discovery in support of their motion for preliminary injunctive relief (Dkt. No. 10). In view of the court's ruling on Plaintiff's motion for injunctive relief, Plaintiff has withdrawn this request and assented to an order from the court denying this motion without prejudice. This order will be separately docketed.

1

Plaintiff's motion for preliminary injunctive relief is GRANTED for the reasons and on the terms that follow.

    II.       BACKGROUND FACTS [2]

Plaintiff began working as an assistant manager for CSO's Center for Community Resilience after Trauma ("CCRT") program at One Arch Place in Greenfield, Massachusetts on March 2, 2020. On March 10, 2020, Massachusetts Governor Charles Baker declared a state of emergency based on the coronavirus outbreak. The Centers for Disease Control and Prevention ("CDC") acknowledged that people with underlying conditions, such as asthma, were at a greater risk of serious illness if they contracted COVID-19. Because of Plaintiff's asthma, their doctors advised them to telework in order to avoid exposure to the virus. On March 18, 2020, Plaintiff advised their direct supervisor, Kelly Boardway, that they needed to telework to protect their health. Plaintiff performed all the essential duties of their position along with other job-related tasks while teleworking.

On May 14, 2020, Sandi Walters, Boardway's supervisor, indicated that CSO wanted managers to return to the office on May 18, 2020. After Plaintiff submitted a note from their primary care provider indicating that Plaintiff needed to work from home for the next four weeks, Plaintiff was granted that accommodation and successfully continued to perform the essential functions of their job.

On June 19, 2020, Plaintiff's request to continue teleworking was denied. Walters' stated reason was "'that they are not approving work from home for managers since [they] need managers in the building and supporting operations.'" Walters indicated that Plaintiff's duties

---

[2] Unless otherwise stated, the background facts are drawn from the verified complaint (Dkt. No. 1).

DRAFT 9-15-20

when they returned to the office would not differ from those that they performed at home.  On June 23, 2020, Walters reiterated that Plaintiff's request to telework was denied.  Plaintiff alleges that CSO did not conduct an individualized assessment of whether Plaintiff could perform the essential functions of their job via telework, or whether Plaintiff's telework would unduly burden CSO.  Plaintiff did not return to the office from June 29, 2020 to July 3, 2020 and, instead, used all of their allotted leave time.

Plaintiff "reluctantly" reported to the office on July 6, 2020.  With the exception of an air purifier, none of the other protective items they had requested – personal protective equipment ("PPE"), masks, hand sanitizer, and wipes – were provided.  On July 7, 2020, Defendant provided Plaintiff with four KN95 masks.  Plaintiff alleges that they could not effectively perform their job while wearing a mask, particularly when interacting with children.  Plaintiff alleges that "working in the office has caused [them] significant hardship and emotional distress."  For example, because Plaintiff believed they could not safely eat or drink in the building, they ate lunch in their car and became dehydrated during the workday.  In addition, Plaintiff was exposed to people who were not wearing masks in the workplace.

On July 27, 2020, Plaintiff emailed a reasonable accommodation request to Boardway with a supporting letter from their allergist asking CSO to allow Plaintiff to resume teleworking.  Boardway also provided a letter in support of Plaintiff's request stating that they could perform all their essential duties from home.  On July 29, 2020, Walters informed Boardway that Plaintiff's request was denied.  During a videoconference meeting on July 30, Walters told Plaintiff that CSO denied their request because "it expect[ed] all managers to work from the office."  According to Plaintiff, CSO did not undertake an individual assessment of their circumstances in view of COVID-19.

Plaintiff tendered a conditional resignation on August 10, 2020 to take effect on September 5, 2020. The resignation letter indicated that it would be rescinded if Plaintiff was permitted to telework.

During a telephone call with all managers on August 27, Walters indicated that managers with children could ask to work remotely for up to two days a week. On that date, Boardway submitted a letter to Walters in support of Plaintiff's request to work from home. Boardway's letter contained details of Plaintiff's value as a CSO employee. Based on Walters' statement and Boardway's letter, Plaintiff rescinded their resignation and renewed their telework request.

On September 1, 2020, Walters informed Plaintiff that their telework request was denied because CSO was not permitting managers to work remotely. CSO purportedly did not undertake an individualized assessment of Plaintiff's situation. Plaintiff learned that their clinical supervisor was permitted to work remotely.

In a September 1, 2020 email message to Walters, Plaintiff indicated that they would work in the office that week and would resume teleworking on September 8. Through counsel, CSO has informed Plaintiff that it "'will enforce its applicable policies'" if they try to telework on September 8. Plaintiff has interpreted that statement to mean that CSO will terminate their employment.

On September 3, 2020, Plaintiff filed a complaint claiming disability discrimination, failure to provide a reasonable accommodation, and creation of a hostile work environment, in violation of the ADA and Chapter 151B. Plaintiff has requested that the court issue a preliminary injunction requiring Defendant to permit Plaintiff to telework "for the duration of the [COVID-19] pandemic" and otherwise "to discontinue its discriminatory practices." Defendant has opposed Plaintiff's motion and has submitted the affidavit of Melody Arsenault, CSO's

Senior Vice President of Human Resources and Compliance, in support of its opposition (Dkt. No. 16-1, Arsenault Aff.).

### III.     LEGAL STANDARD

"In determining whether to grant a preliminary injunction, the district court must consider: (i) the movant's likelihood of success on the merits of the claims; (ii) whether and to what extent the movant will suffer irreparable harm if the injunction is withheld; (iii) the balance of hardships as between the parties; and (iv) the effect, if any, that an injunction (or the withholding of one) may have on the public interest." *Corp. Techs., Inc. v. Harnett*, 731 F.3d 6, 9 (1st Cir. 2013) (citing *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 15 (1st Cir. 1996)).  "The party seeking the preliminary injunction bears the burden of establishing that these four factors weigh in its favor." *Esso Standard Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006).

### IV.     ANALYSIS

**A.     Plaintiff is likely to succeed on the merits of their failure to accommodate claim.**

Plaintiff claims that CSO failed to provide a reasonable accommodation for their disability (asthma) in view of COVID-19 and failed to engage in the requisite interactive process to address their request for a reasonable accommodation for their disability.  "With respect to the claim of failure to accommodate, a plaintiff must demonstrate that (1) [they are] '"disabled within the meaning of the ADA, (2) [they were] able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [the employer], despite knowing of [their] disability, did not reasonably accommodate it.'" *Quattrucci v. Mass. Gen. Hosp.*, CIVIL ACTION NO. 17-11250-GAO, 2020 WL 1323111, at *3 (D. Mass. Mar. 20, 2020) (third alteration in original) (quoting *E.E.O.C. v. Kohl's Dep't Stores, Inc.,* 774 F.3d 127, 131 (1st Cir.

2014) (quotations omitted)).  "'Failing to provide reasonable accommodations for a qualified employee's known physical or mental limitations constitutes discrimination, unless an employer can demonstrate that such an accommodation would impose an undue hardship.'"  *Eustace v. Springfield Pub. Schs.*, Civil Action No. 17-30158-MGM, 2020 WL 2798260, at *6 (D. Mass. May 29, 2020) (quoting *Audette v. Town of Plymouth, MA*, 858 F.3d 13, 20 (1st Cir. 2017)).

"Under the third element, an employee's request for accommodation sometimes creates 'a duty on the part of the employer to engage in an interactive process.'"  *Kohl's Dep't Stores, Inc.*, 774 F.3d at 132 & n.5 (quoting *Enica v. Principi*, 544 F.3d 328, 338 (1st Cir. 2008)).  "The employer has an obligation upon learning of an employee's disability to 'engage in a meaningful dialogue with the employee to find the best means of accommodating that disability.'" *Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 104 (1st Cir. 2007) (quoting *Tobin v. Liberty Mut. Ins. Co.,* 433 F.3d 100, 108 (1st Cir. 2005)).  "The employee also has an obligation: 'The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability.'"  *Id.* (alteration in original) (quoting 29 C.F.R. pt. 1630, app. § 1630.9).  "There may well be situations in which the employer's failure to engage in an informal interactive process would constitute a failure to provide reasonable accommodation that amounts to a violation of the ADA."  *Jacques v. Clean–Up Grp., Inc.,* 96 F.3d 506, 515 (1st Cir. 1996).

As to the first element, Plaintiff is likely to prevail on their contention that their asthma is a disability, at least during the COVID-19 pandemic.  The ADA defines "disability" as:  "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).

> In order to determine whether a person is disabled under the ADA, the court must conduct a tripartite analysis. First, plaintiff must prove that he suffers from a physical or mental impairment. Second, the court must evaluate the life activities affected by the impairment to determine if they constitute a "major life activity." Lastly, "tying the two statutory phrases together, [the court] ask[s] whether the impairment substantially limits the activity found to be a major life activity."

*Rivera-Mercado v. Scotiabank De Puerto Rico-Int'l*, 571 F. Supp. 2d 279, 294 (D.P.R. 2008) (citations omitted). Plaintiff's moderate asthma, as described in the complaint, qualifies as an impairment. *See Lima v. Middlesex Sheriff's Ofc.,* CIVIL ACTION NO. 19-11372-RGS, 2020 WL 823088, at *5 (D. Mass. Feb. 19, 2020). "Unobstructed breathing" qualifies as a major life activity. *Id. See Ramos-Echevarria v. Pichis, Inc.*, 659 F.3d 182, 187 (1st Cir. 2011) ("Major life activities are basic activities of daily life that an average person in the general population can perform with little or no difficulty—'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'") (quoting 29 C.F.R. § 1630.2(i) (1991)). "Whether a plaintiff with asthma is substantially limited in his ability to work or to breathe is a fact specific question." *Murtha v. N. Y. State Gaming Comm'n*, No. 17 Civ. 10040 (NSR), 2019 WL 4450687, at *10 (S.D.N.Y. Sept. 17, 2019) (citing *Burke v. Niagara Mohawk Power Corp.*, 142 F. App'x 527, 529 (2d Cir. 2005) (noting that "asthma does not invariably impair a major life activity")). Plaintiff alleges that, although they are under the care of several health care providers for treatment of their asthma and abide by treatment recommendations, they still have comparatively frequent asthma attacks during which they cannot breathe properly (Compl., ¶¶ 23-34). Further, Plaintiff has pled that, because of their asthma, they are at higher risk for serious illness or even death if they contract COVID-19. *See Silver v. City of Alexandria*, CASE NO. 1:20-CV-00698, 2020 WL 3639696, at *4 (W.D. La. July 6, 2020) (during the COVID-19 pandemic, whether a plaintiff has a disability should be judged by the totality of the circumstances, including the heightened risks of an impairment

caused by the pandemic); *Valentine v. Collier*, Civil Action No. 4:20-CV-1115, 2020 WL 3625730, at *2 (S.D. Tex. July 2, 2020) (plaintiffs successfully pled a failure to accommodate claim where they identified disabilities that subjected them to a heightened risk of death or serious illness if they contracted COVID-19).  The court finds persuasive this limited precedent addressing the standard for determining whether an individual has an impairment that substantially limits a major life activity, thus rising to the level of a disability, during this pandemic.

     As to the second element, Plaintiff is also likely to be able to prove by a preponderance of the evidence that they are able to perform the essential functions of their job with or without reasonable accommodation.  Plaintiff has, in their verified complaint, set forth the text of an August 27, 2020 email from their immediate supervisor detailing Plaintiff's value as a CSO employee and their ability to perform the essential functions of their job (Compl., ¶ 178).

     There can be little dispute that Plaintiff requested to telework as a reasonable accommodation and that they have provided evidence, in the August 27, 2020 email from their supervisor, that they can perform the essential functions of their job remotely.  *See Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 136 (1st Cir. 2009) (a plaintiff bears the burden of proving that the "'proposed accommodation would enable [them] to perform the essential functions of [their] job'" and that, "at least on the face of things, [the accommodation] is feasible for the employer under the circumstances.'") (third alteration in original) (quoting *Reed v. LePage Bakeries, Inc.,* 244 F.3d 254, 259 (1st Cir. 2001)).  "Telework is certainly contemplated as a viable accommodation in certain circumstances." *Merrill v. McCarthy*, 184 F. Supp. 3d 221, 239 (E.D.N.C. 2016) (citing *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, EEOC Notice No. 915.002, 2002 WL

DRAFT 9-15-20

31994335, at *24 (Oct. 17, 2002); *Work at Home/Telework as a Reasonable Accommodation*, https://www.eeoc.gov/facts/telework.html (last visited 11 April 2016)).  Further, their allergist recommended teleworking as a reasonable accommodation.  After Plaintiff successfully teleworked for four months, Defendant allegedly denied their request to continue teleworking on June 19, 2020, allegedly without engaging in the interactive process.  Instead, CSO issued a blanket statement that all managers were required to work at CSO locations, including One Arch Street "to ensure that its programs can efficiently operate" (Arsenault Aff. ¶ 33).

CSO claims that it has accommodated Plaintiff by providing KN95 face masks, hand sanitizer and wipes, an air purifier, and separate, private work space in the CCRT program area on the second floor which has less foot traffic than the first floor (Arsenault Aff. ¶¶ 10, 20, 21).  A majority of these so-called accommodations are workplace safety rules rather than an individualized accommodation to address Plaintiff's disability (Arsenault Aff. ¶ 10).  CSO indicates that, as a further accommodation, it offered Plaintiff "the use of accrued time or a personal leave of absence if they felt that they did not wish to return to the office" but Plaintiff declined to request a leave (Arsenault Aff. ¶ 24).  It is difficult to see how a leave – which Plaintiff has not requested and which is generally an accommodation that should be considered when an employee needs time to recover from an impairment – would enable them to perform the essential functions of their job.

"The interactive process 'requires a great deal of communication between the employee and employer.'" *Eustace*, 2020 WL 2798260, at *12 (quoting *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 24 (1st Cir. 2004)).  "The scope of the employer's obligation in this process is not crystal clear but '[t]he employer has at least some responsibility in determining the necessary accommodation,' since 'the regulations envision an interactive process that requires

9

DRAFT 9-15-20

participation by both parties.'" *Calero-Cerezo*, 355 F.3d at 24 (alteration in original) (quoting 29 C.F.R. § 1630.2(o)(3)). Plaintiff alleges that their requests to telework were denied on July 29, 2020 and September 1, 2020 without CSO's engagement in the interactive process, *see Ralph v. Lucent Techs., Inc.,* 135 F.3d 166, 171 (1st Cir. 1998) (employers have a continuing duty to provide a reasonable accommodation), and CSO has not provided evidence that it considered Plaintiff's telework request on an individualized basis. Once a plaintiff has made a showing that an accommodation seems reasonable on its face, as Plaintiff has here, "'the defendant[] then must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances.'" *Eustace*, 2020 WL 2798260, at *9 (alteration in original) (quoting *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02 (2002)). According to CSO, all managers were required to be on-site "to enforce agency rules, including COVID-19 safety rules" and to be available for an in-person response to a client if requested (Arsenault Aff. ¶ 33). CSO's submission, however, shows that there were other managers working on-site (Arsenault Aff. ¶¶ 27-31) and Plaintiff's immediate supervisor believed that they can perform the essential functions of the job while working remotely. It is unlikely that CSO will be able to show that permitting Plaintiff's request to telework would be an undue hardship. *See Garcia–Ayala v. Lederle Parenterals, Inc.,* 212 F.3d 638, 648 n.12, 650 (1st Cir. 2000) (reversing summary judgment for employer and granting judgment for employee where company had "simply rejected the request for the accommodation without further discussion and did so without pointing to any facts making the accommodation harmful to its business needs."). On the record

before the court, it fairly appears that Plaintiff is likely to succeed on the merits of their failure to accommodate claim.[3]

### B. Plaintiff will suffer irreparable harm if the injunction is not issued.

As the court stated at the hearing, a court should be very hesitant to intrude into the employment relationship. "A federal court must find a cognizable threat of irreparable harm as an essential prerequisite to the issuance of a preliminary injunction." *Ralph,* 135 F.3d at 170. "'Though losses occasioned by employment disputes often do not rise to the level of irreparable harm,'" *id.,* "cases [nonetheless] may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found." *Sampson v. Murray*, 415 U.S. 61, 91-92 & n.68 (1974). This is not a normal situation. Plaintiff faces the loss of their employment at a time when the unemployment rate in Massachusetts was the highest in the country (an astounding 16.1%) in July. *See* Shirley Leung and Larry Edelman, *Economic Rebound is Stuck at Home,* BOSTON SUNDAY GLOBE, Sept. 13, 2020, at A1. In the midst of the dire economic fallout from the pandemic, CSO's optimistic pronouncements about Plaintiff's employability are less than persuasive (Arsenault Aff., ¶¶ 42-44). As Plaintiff contends, the loss of employment creates a likelihood of a cascade of further negative consequences, including, at least in the short-term, the likely loss of employer-provided health insurance. In the unusual circumstances of the pandemic, Plaintiff has adequately shown irreparable harm from the likely loss of employment in the absence of a viable accommodation.

---

[3] Because "'Chapter 151B tracks the ADA in virtually all [relevant] respects,'" Plaintiff's claims under that statute are not addressed separately. *Boadi v. Ctr. for Human Dev., Inc.*, 239 F. Supp. 3d 333, 349 (D. Mass. 2017) (quoting *Smith v. Pub. Schs. of Northborough–Southborough*, 133 F. Supp. 3d 289, 295 (D. Mass. 2015)).

Nor is CSO qualified to opine on the risks to Plaintiff posed by COVID-19. Plaintiff's health care provider recommended telework as a reasonable accommodation for Plaintiff's asthma and the increased risk of serious illness or even death in the event of a COVID-19 infection (Compl., ¶ 145). The risk of irreparable harm to Plaintiff – in the form of the possible serious consequences of an infection if they are not permitted to telework – cannot be discounted.

### C. The balance of hardships weighs in Plaintiff's favor.

Defendant's stated reason for refusing to permit Plaintiff to telework was that it needed managers to be present in the office to provide supervision and in-person client visits, if requested (Arsenault Aff. ¶ 33). However, Plaintiff has presented evidence that they performed the same duties on-site that they performed from home and that they are able to perform their job while teleworking as well as they could in the office. With other managers working on-site and Plaintiff's immediate manager supporting her telework request, CSO failed to articulate a hardship that outweighs the alleged hardship of requiring Plaintiff to continue reporting in person to work at One Arch Place in Greenfield (Compl., ¶¶ 122-144). Consequently, the balance of hardships weighs in Plaintiff's favor.

### D. The withholding of an injunction may have a negative impact on public health.

To the extent there is a public interest in this dispute, this factor also weighs in Plaintiff's favor. CSO performs critical work for a vulnerable population. The record shows that Plaintiff has the skills necessary to serve CCRT's clients who are victims of trauma receiving weekly therapy and support (Arsenault Aff. ¶ 35). The termination of Plaintiff's employment at an organization that provides social services to highly traumatized, at-risk clients may negatively

impact public health by placing additional burdens on those who are already struggling with mental health issues.

### V. CONCLUSION

Plaintiff has sustained their burden of establishing that they are likely to succeed on the merits of their claims, that they are likely to suffer irreparable harm if they are denied the relief that they seek, that the balance of hardships weighs in their favor, and that the withholding of a preliminary injunction may have a negative impact on public health. The court grants Plaintiff's motion for a preliminary injunction (Dkt. No. 2) on the following terms: Plaintiff is entitled to telework as a reasonable accommodation pursuant to the ADA and Chapter 151B for sixty (60) days or until further order of the court. During this period of time, CSO is entitled to seek further medical documentation concerning Plaintiff's alleged disability. The parties are strongly encouraged to discuss a mutually acceptable resolution of their dispute. A status conference has been scheduled on October 8, 2020 at 10:00 A.M.

It is so ordered.

Date: September 16, 2020
/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge